Cheshire,
March 2, 1909. }

### GREEN *& a., Apt's, v.* BANCROFT.

Under the statute of descent and distribution, the aunt of a person deceased is entitled to the unbequeathed estate, to the exclusion of cousins.

PROBATE APPEAL. The probate court decreed the unbequeathed estate of Maria R. Adams to her surviving aunt, to the exclusion of the children of deceased uncles and aunts. Upon appeal the decree was affirmed, and the appellants excepted. Transferred from the April term, 1908, of the superior court by *Stone*, J.

*Hall & Adams* and *Townsend, Avery & Button* (all of New York) and *Streeter & Hollis*, for the plaintiffs.

*Cain & Benton*, for the defendant.

PEASLEE, J. The appellants contend that the act of 1789 (Laws, *ed.* 1789, *p.* 77) changed the rule for representation among collaterals, so that thereafter all those who were related to the deceased in the third degree could take in this manner. It is admitted that this construction is contrary to the practice

under the statute for 120 years and to the decided cases (*Kelsey* v. *Hardy*, 20 N. H. 479; *Dodge* v. *Lewis*, 71 N. H. 324), but it is urged that this practice and these decisions are so plainly erroneous that they should not be followed.

The English statute of 1672, providing that there should be no representation among collaterals "after brother's and sister's children" (22 & 23 Car. II, c. 10), early received a definite construction. "No representation was admissible except between brothers and sisters of the intestate and their children." *Page* v. *Parker*, 61 N. H. 65. This statute was reënacted in the colony in 1718. Prov. Laws, *ed.* 1725, *p.* 103. In 1789, the statutes regulating administration and the distribution of estates were revised, and the phrase "beyond the degree of" was substituted for "after." Many other changes were made at that time. Some were substantial, but most of them were merely formal. It was then understood that this change belonged to the latter class. Chief Justice *Jeremiah Smith*, writing between 1797 and 1805 (Smith N. H. 447, note 1) on the taking by next of kin, says: "The children of the brothers and sisters of the intestate representing their parents, but no further representation being admitted among collaterals." Ms. Treatise on Probate Law, Smith N. H. 462. In the earliest reported case involving this statute it was said to be essentially a copy of the English act. *Parker* v. *Nims*, 2 N. H. 460. Shortly thereafter, Chief Justice *Richardson* declared that this proviso was substantially the same as that in the act of 1718. *M'Afee* v. *Gilmore*, 4 N. H. 391, 396. In the revision of 1842, the statute was arranged in its present form and the limitation in question was made a separate section. Comm'rs' Rep. R. S., c. 169, *ss.* 1, 3; R. S., c. 166, *ss.* 1, 3.

Four years later the case of *Kelsey* v. *Hardy*, 20 N. H. 479, was decided. The question given the most consideration in the opinion was whether the paternal estate went to the maternal grandmother or to a paternal uncle; but the case shows that the question whether the uncle would take the whole estate because he alone was of the paternal stock was not the only one presented. If he could not thus claim the whole, he sought to take a part by right of representation. The agreed case states the questions thus: "But if the court shall be of opinion that the appellant, in his own right, as next of kin on the part of the father, or as representative of the paternal stock of him, is entitled to take the whole or any part of said estate, then the decree is to be so far reversed." *Ib.* 480. The opinion states the rule under the English statute, "that no representation was admissible except between brothers and sisters of the intestate," and goes on to say: "These decisions, made at an early period, have been since considered as

having settled the construction of the statute in the particulars to which they relate, and have not been successfully drawn in question since, so far as the cases have been brought to our notice." *Ib.* 482. And having disposed of the claim to take the whole estate upon the paternal stock theory, the other claim to take a part of the estate by representation is finally dealt with as follows: "Its descent and distribution follow the general rule, which assigns it to the next of kin in equal degree. The grandmother is the second, and the uncle, deriving kindred through a grandparent, is of course in the third degree, and cannot share with her the inheritance."

It thus appears that the claim of one related to the deceased in the third degree to take by representation was presented to the court, and its validity was denied. It may be that the court did not have the benefit of the argument now advanced, and that if it had, a different result would have been reached. The fact remains that the meaning of the statute was declared by the court and has since been adopted by legislative reënactments of the same provision. G. S., *c.* 184, *ss.* 1, 3; G. L., *c.* 203, *ss.* 1, 3; Laws 1883, *c.* 72; P. S., *c.* 196, *ss.* 1, 3; Laws 1903, *c.* 74; *Parsons* v. *Durham*, 70 N. H. 44.

It is suggested that the rule, "that when the legislature adopt or reënact a statute the previous construction of the statute as settled by courts of law is adopted" (*Tomson* v. *Ward*, 1 N. H. 9, 12), ought not to apply here, because the decided case may be somewhat obscure and because the opinion does not cite the chapter and section of the statute which it construes. If this argument has force as to the revisions of 1867 and 1878, it fails as to that of 1891. In 1881, the fact that *Kelsey* v. *Hardy* construed this statute and followed the English rule was plainly stated, and the decision was expressly approved by the court. *Page* v. *Parker*, 61 N. H. 65. An examination of the briefs in this case gives added weight to the language of the opinion. Counsel suggested in argument the theory now advanced, that the statute was intended to include all who were related to the deceased in the third degree. 131 Briefs and Cases 415. At this time, if not before, the court had the benefit of the reasoning now relied upon.

The question long ago ceased to be: What is the primary meaning of the language used in the act of 1789? "By common understanding and repeated judicial definition adopted by the legislative reënactment of the statute" (*Wyatt* v. *Board of Equalization*, 74 N. H. 552, 557), the meaning of the language has become fixed. There being "no evidence that in 1891 the soundness of the judicial conclusion  .  .  .  had ever been

questioned," the argument as to its soundness is now without weight. *Ib.*

The act of 1883 (Laws 1883, *c.* 72) does not undertake to change the settled meaning of the existing law. It merely changes the limit beyond which collaterals cannot take by representation. Formerly it was the children of brothers and sisters; now it is their grandchildren.

There are substantial reasons why the established construction of this statute should be followed, even if it be conceded that it is not the most scientific one of which the language used is susceptible. It was adopted at an early date and "has since been followed by our courts of probate in the distribution of estates. If it should be overturned, disastrous consequences would inevitably result in numerous instances." *Page* v. *Parker*, 61 N. H. 65. It is a rule of property which has been well understood for 120 years. Its reaffirmation in *Dodge* v. *Lewis*, 71 N. H. 324, if not made obligatory upon the court by the action of succeeding legislatures, was imperatively called for by the authority of the decided cases and the practical application of the law for more than a century. *Tomson* v. *Ward*, 1 N. H. 9, 12.

Nor is this all. *Dodge* v. *Lewis* was decided in April, 1902, and was at once made available in the advance sheets of the current volume of reports. If any or all other cases are ambiguous, this one is not. Uncles and aunts take to the exclusion of cousins. In 1903, the legislature amended the section governing intestate succession, but allowed this clause of the section to remain as it was. Laws 1903, *c.* 74. Had there been an idea that the construction announced in *Dodge* v. *Lewis* was erroneous, it is fair to assume that clause IV would have been amended along with clause III. Not only was there a failure to do this, but the way clause III was amended shows that the legislature understood and approved the rule of *Dodge* v. *Lewis*.

Before 1903, the provision as to distribution was: " III. If there be no issue or father, in equal shares to the mother and to the brother and sisters, or their representatives. IV. To the next of kin in equal shares." P. S., *c.* 196, *s.* 1. By the act of 1903, the mother's rights were classed with those of the father, in subdivision II, and subdivision III was reënacted to read: " If there be no issue or father or mother, in equal shares to the brothers and sisters or their representatives." If, as the appellants contend, the legislators understood that all collaterals within the fourth degree could take by representation, the provisions of subdivision III were superfluous, after the mother was provided for by another clause. All collaterals and their representatives would then be included under subdivision IV: "To

the next of kin in equal shares." But the legislators did not so understand. Therefore they kept brothers and sisters and their representatives in a clause separate from " the next of kin," who do not take by representation. While the act of 1903 does not reënact the clause in question, it so plainly recognizes the meaning to be as stated in *Dodge* v. *Lewis* that the action taken may fairly be said to add a weighty reason for refusing to disturb the settled law of the state.

*Exception overruled.*

All concurred.