Coos County Probate Court
No. 87-156

*In re* ESTATE OF WINIFRED TRASK

June 8, 1988

*Hamblett and Kerrigan P.A.*, of Nashua (*Joseph M. Kerrigan* on the brief, and *Jeremy G. Welts* orally), for the petitioner, Theodore I. Forbes.

*Clement Law Office*, of Groveton (*Raymond K. Clement* on the brief and orally), for Jane J. Sims, Administratrix.

SOUTER, J. The son of an intestate decedent's predeceased first cousin appeals from a decree of the Coos County Probate Court (*Harrigan*, J.), which denied his petition for a share in the decedent's estate by right of representation. We affirm.

On October 2, 1983, Winifred Trask died intestate, without surviving spouse, issue, parents, issue of parents, grandparents or children of grandparents. The decedent's nearest kin were six first cousins: four grandchildren of her paternal grandparents, and two grandchildren of her grandparents on the maternal side. The probate court divided the estate into halves in accordance with RSA 561:1, II(d), and ordered the paternal half to be distributed among the four paternal first cousins, and the maternal half between the two first cousins on that side. *See id.*

The petitioner, Theodore Forbes, contests this decree on behalf of himself and his brother, as first cousins of the decedent once removed, being children of one of the decedent's maternal first cousins who predeceased her. The petitioner's claim rests on two propositions of law: that those collaterally related to an intestate decedent through the line of a decedent's uncle or aunt may share by representation in the intestate's estate under RSA 561:1, II(d); and that at the time of this decedent's death there was no limit on the degree of kinship to the decedent within which collateral representation was allowed in an uncle's or aunt's line. The first proposition is correct and uncontested; the second is contested and, we hold, inconsistent with RSA 561:3, which on the date of the decedent's death provided that "[n]o representation shall be allowed among collaterals beyond the degree of brothers' and sisters'

grandchildren." (As explained below, this was the text of the statute from 1789 through 1986, except insofar as the law prior to an 1883 amendment identified the restriction by referring to "brothers' and sisters' children." We will therefore employ the convenience of referring to the provision simply as "§ 3," regardless of its various citations in the statutory compilations over the years.)

We thus resolve an issue mentioned, but left open, when we decided *In re Estate of Martineau*, 126 N.H. 250, 254–55, 490 A.2d 779, 782 (1985), whether § 3 limited representation only in the collateral lines of brothers and sisters of the decedent, or applied to collaterals generally and, therefore, to collaterals in the lines of uncles and aunts. After the decision in *Martineau*, the legislature settled the issue with respect to estates of decedents who died after 1986, for January 1, 1987, was the effective date of an amendment modifying the text of the statute to read that "[n]o representation shall be allowed among collaterals beyond the fourth degree of relationship to the decedent." If the statute as amended were applicable to this estate, therefore, the petitioner could not take by representation, since as a first cousin once removed he stands in the fifth degree of kinship to the decedent. Because the decedent died before 1987, however, the petition and appeal have called for our construction of the statute in its form before the amendment.

The petitioner's reasoning may be simply stated. He begins with the assumption that under "the early New Hampshire statutes" the estate of an intestate who left no issue, parents, brothers, sisters or representatives of brothers and sisters passed to the next of kin in equal shares. *See, e.g.,* RS 166:1 (1842). He claims that the terms of the provision for next of kin in equal shares excluded any possibility for taking by representation in the stead of a deceased relation, and he maintains that representation was actually recognized only in the line of a decedent's brother or sister. He states, therefore, that the § 3 bar on collateral representation among those "beyond the degree of brothers' and sisters' children" (or grandchildren after the amendment by Laws 1883, ch. 72) was never applied to limit representation in any collateral line except that of a brother or sister. From this, he infers that "[i]t is clear that Section 3 was exclusively intended to limit only the collateral representation rights of the issue of brothers and sisters of the intestate. There was no other class in the early statutes to be affected by the limitations of Section 3." Thus, he concludes that the limitation "should reasonably be interpreted as a limitation only on the rights of the issue of brothers and sisters . . . and nothing more." Because the petitioner finds this intended meaning

undisturbed by case law or legislation until the 1986 amendment, he would have us hold that § 3 was no bar in 1983 to his taking a share by representation as a collateral in the line of an uncle or aunt of the intestate, even though he himself stood in the fifth degree of kinship to the decedent.

Despite its clarity, the argument is open to two objections that appear to stand between the petitioner and the result he seeks. The first rests, of course, on the choice of language in § 3, which barred representation beyond "the degree of brothers' and sisters' children [or grandchildren]," not merely "beyond brothers' and sisters' children [or grandchildren]." Using the phrase "degree of" suggests that it is the third (or, after the 1883 amendment, the fourth) degree of kinship that is significant, a degree merely determined and illustrated by the specific reference to the children or grandchildren in a sibling's line. The suggestion gathers emphasis from some early statutory history. The reference to "degree of" was inserted into § 3 by the Act of February 3, 1789, *see* 5 N.H. Laws 384, 385, whereas the predecessor statute had merely limited representation "among Collaterals after Brothers and Sisters Children." Act of May 14, 1718; *see* 2 N.H. Laws 295, 297. Thus, on the face of it, the 1789 statute can be read to reflect an intention to extend the application of the limitation from the siblings' lines to all collaterals, including those in the present petitioner's line.

The petitioner musters a partial response to this analysis by citing us to *Green v. Bancroft*, 75 N.H. 204, 72 A. 373 (1909), which discussed the statute's history extending back to its 1672 English predecessor, cited as 22 & 23 Car. II, c. 10. In tracing this history, the court observed that the 1789 change from "after" to "beyond the degree of" was thought to be a change of form but not of substance. *Green v. Bancroft, supra* at 205, 72 A. 374.

This statement settles nothing, however. While it may well be true, it is not an unequivocal answer to the question before us, for there might have been no change in substance either because the new language was not understood to create a general limitation, as the petitioner claims, or because the old language was thought to provide a general limitation consistent with the new language, or because on other grounds no representation was possible in any collateral line except that of a sibling. It would be interesting to pursue the historical enquiry into the English cases to see whether any of these alternatives was correct; some of the English authorities are, indeed, cited in *Page v. Parker*, 61 N.H. 65, 66 (1881), but only for the cryptic conclusion that under the 1672 statute "no [collateral] representation was admissible except

between brothers and sisters of the intestate and their children." We have no excuse to delve into English legal history, however, for our own reports include a case that adopted a view of § 3 at odds equally with the petitioner's assumptions about the early New Hampshire law, and with his proposed conclusion that the pre-1987 text of § 3 had no application to representation in the line of an aunt or uncle.

Neither party before us cited *Parker v. Nims*, 2 N.H. 460 (1822), which stands together with the statute it construed as the second, and dispositive, objection to the petitioner's historical argument. To understand the significance of *Parker*, it is useful to recall that the present petitioner assumed § 3 received a definitive construction as part of an intestacy statute exemplified by RS 166:1 (1842), which provided, *inter alia*, for descent and distribution to brothers and sisters or their representatives, in the absence of whom property would ultimately go to next of kin in equal shares, but without right of representation. Thus it seemed to make sense to argue that the § 3 limitation could never have applied or have been understood to apply to any collateral line except that of a sibling. The assumption, however, is not correct.

The 1789 act that inserted the reference to "degree" into § 3 also contained a provision for representation in intestate succession that was far more general than the provision of RS 166:1 or any other subsequent intestacy statute. The 1789 act provided that "where there are no children or child of the intestate, the Inheritance shall descend equally to the next of kin in equal degree, and those who represent them." (This was followed by what we now call the § 3 limitation.) Unlike later statutes, then, the act of 1789 made no separate provision for brothers and sisters or their representatives, nor did it contain a further and distinct provision for next of kin without any reference to representation. On the contrary, the statute spoke of only two classes, "children or child," and all others as "next of kin . . . and those who represent them."

It was, therefore, inevitable that eventually a claim to take by representation would be made under the 1789 act by a collateral in some line more remote than that of a sibling of the intestate. Apparently, such a claim resulted in *Parker v. Nims supra*, which considered whether first cousins, the children of an aunt who had predeceased the intestate, were entitled to take any share when other aunts and uncles survived the decedent. The court held that "the children of the deceased aunt take nothing in this case. They are beyond the degree [*i.e.* the third] of brothers' and sisters' children." *Parker*, 2 N.H. at 461.

The present significance of *Parker* lies in the fact that the court applied § 3 to reach the result, and thereby held that the § 3 limitation was applicable to limit representation in the line of an uncle or aunt. The holding thus shatters the petitioner's claim, quoted above, that § 3 "was exclusively intended to limit only the collateral representation rights [in a sibling's line]," since there was "no other class in the early statutes to be affected" by § 3. While it is true that the result of *Parker v. Nims* was that no collateral could take by representation as issue in the line of an uncle or aunt, that was true precisely because *Parker* applied the § 3 limitation to descent and distribution in the collateral lines of the decedent's aunts and uncles. If, then, *Parker* is still good authority for applying § 3 to an aunt's or uncle's line, the application of the 1983 version of § 3 must bar the petitioner's claim.

Although a century and a half of litigation and amendment to the intestacy statutes separate us from *Parker*, we are satisfied that the case remains good law and is dispositive of the question before us, as an examination of cases cited by the petitioner will indicate. The first of these is *Page v. Parker*, 61 N.H. 65 (1881), which considered the provision of G.L. 203:1, that in the absence of surviving issue or father, an intestate's real estate went "in equal shares to the mother and to the brothers and sisters or their representatives," and that if none of them survived it devolved upon the "next of kin in equal shares." Four first cousins, children of predeceased maternal uncles and aunts, claimed, *inter alia*, to take as next of kin, despite the existence of an uncle who survived the decedent. The court could have disposed of this claim simply by noting that the uncle, not the cousins, was next of kin, and that the statute made no general provision for representation. Instead, however, it relied on exactly the same reasoning that decided *Parker v. Nims supra*, "that the [cousins] are collaterals to the intestate, and therefore are expressly barred by s. 3 of the same chapter, which provides that 'no representation shall be allowed among collaterals beyond the degree of brothers' and sisters' children.'" *Page v. Parker, supra* at 66. The court thus affirmed the applicability of § 3 to limit representation in the line of an uncle or aunt, even when the case could have been (but was not) decided on other grounds.

The later cases cited by the petitioner do not disturb *Parker* or *Page*. We have referred already to *Green v. Bancroft*, 75 N.H. 204, 72 A. 373 (1909), which held that § 3 did not create a right to take by representation but was rather a limitation on that right. While the court referred to the "settled . . . construction" of the statute

as confining representation to the lines of siblings, *id.* at 205–06, 72 A. at 374, this had been true originally because it was only within these closest collateral lines that representation could occur within the limitation to the third degree. The "settled . . . construction" had not been disturbed even after 1883, when the legislature enlarged the permitted degrees to include the fourth, since the provision that allowed collaterals in an aunt's or uncle's line to take at all was the provision for the next of kin in equal shares, P.S. 196:1, IV, and this was understood to exclude any right of representation, *Green v. Bancroft, supra* at 208, 72 A. at 375. There was therefore no occasion to reconsider the applicability of § 3 to an aunt's or uncle's line at the time *Green* was decided, and this would remain true until 1973, when the legislature first provided specifically for representation in an aunt's or uncle's line, *see* Laws 1973, 293:1; Laws 1974, 18:2; RSA 561:1. *Green,* therefore, neither upset the "settled . . . construction" nor overruled *Parker v. Nims supra* and *Page v. Parker supra,* on which that construction rested. *Cf. In re Estate of Martineau,* 126 N.H. 250, 255, 490 A.2d 779, 782 (1985).

The final case cited by the petitioner likewise leaves the early construction of § 3 untouched. *Coram v. Connell,* 103 N.H. 26, 164 A.2d 251 (1960) again held that under the statutory scheme considered in *Green v. Bancroft supra, see* RSA 561:1, a surviving aunt would take to the exclusion of first cousins who were children of predeceased aunts and uncles. But in so holding, the court did not apply or construe § 3. It relied, rather, on RSA 561:1 and :6, which then made provision for the "next of kin in equal shares" but contained no provision for representation among "next of kin." Nor does the opinion affect the meaning of § 3 either by citing *Green,* which did not overrule *Parker*'s construction of § 3, or by citing *Dodge v. Lewis,* 71 N.H. 324, 51 A. 1071 (1902), which did not mention § 3 at all.

In fine, none of the cases that the petitioner relies upon overruled the construction first announced in *Parker v. Nims* and affirmed in *Page v. Parker.* In 1973, therefore, when the legislature specifically provided for representation in the collateral lines of uncles and aunts, § 3 was applicable to bar that representation to those beyond the fourth degree, and it so operated in this case.

We should add that no consideration of policy would have brought us to a different result, even if the cases had left the construction of § 3 up in the air (as an isolated reading of *In re Bunker Estate,* 106 N.H. 391, 393, 211 A.2d 902, 904 (1965) might well have suggested). We have heard no reason why an early legislature

might have intended to approve unlimited representation in the further collateral line of an intestate's aunt or uncle, when it limited representation in the nearer line of a sibling. Nor, it would seem, did the legislature more recently think there was a justification for any such disparate treatment, which it rejected in favor of the uniform limitation unambiguously expressed in the 1986 amendment of § 3. While the 1986 amendment would not, of course, be binding on us if we had any doubts about the meaning of the statute as it existed when the decedent died, the 1986 enactment would nonetheless point to the appropriate public policy for a time so close to the effective date of the new legislation.

*Affirmed.*

All concurred.